IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO


ANASTATIA JASPER,

    Plaintiff,

vs.                                  10cv980 MCA/RHS

WINDSOR EQUITY GROUP, INC.,

    Defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This matter came before the Court for trial on September 10 and November 7, 2012. Pursuant to Fed. R. CIV. P. 52(a), the Court, having considered the evidence presented at trial, the record in this case, the applicable law, and otherwise being fully advised, enters the following Findings of Fact and Conclusions of Law:

    1.    Plaintiff, Anastatia Jasper, is a resident of New Mexico.

    2.    Defendant, Windsor Equity Group, Inc., is a Texas Corporation whose principal place of business is located in Texas.

    3.    Windsor is in the business of skip tracing; Windsor does not regularly engage in the business of debt collection.

    4.    Plaintiff purchased a truck primarily for personal and household use from an Albuquerque automobile dealer. Plaintiff purchased the truck with funds from a loan with Chase Bank. Plaintiff used Nicole Balido, whom she was living at the time, as a contact on the loan documents.

5.  In late December 2009, Plaintiff filed a lawsuit in the Bernalillo County District Court against various defendants, including Chase Bank and the dealer who sold her the truck. *Jasper v. Mark Buick*, No. D-202-cv-200915381. Plaintiff claimed, *inter alia*, that the dealer had failed to disclose preexisting damage to the truck. The attorney representing Plaintiff in her dispute with Chase Bank was Richard N. Feferman, her attorney in the present action.

6.  Plaintiff became delinquent on the loan with Chase Bank.

7.  Plaintiff's delinquency triggered Chase Bank's right to repossess the truck purchased by Plaintiff.

8.  Plaintiff had been employed in three jobs that involved collections, and was aware of the "dos and don'ts" of collections.

9.  In May 2010, Plaintiff consulted a Denver, Colorado bankruptcy attorney, Steven W. Hickox, paying him $100.

10. Plaintiff led Hickox to believe that she was considering filing a Chapter 7 bankruptcy proceeding in Colorado.

11. The $100 was a consultation fee, not a retainer.

12. In July 2010, Plaintiff and Nicole Balido ceased living together. Plaintiff moved from Colorado, where she and Balido had been living together, to Rio Rancho, New Mexico. Plaintiff moved in with Brian and Alissa Britt, her stepfather and mother.

13. Plaintiff's truck potentially was evidence in her state court lawsuit.

14. To prevent Chase Bank from exercising its right to repossess the truck securing its loan to Plaintiff, Plaintiff concealed the truck in the backyard of her stepfather and mother's Rio Rancho residence.

15. In approximately mid-August 2010, Chase Bank hired Windsor to locate Plaintiff and the truck securing Chase Bank's loan; Windsor was not hired to collect the debt to Chase Bank secured by the truck.

16. On August 16, 2010, Windsor began actively working on Plaintiff's case.

17. The "Summary-- All calls involving the Jasper account" attached to the joint Additional Stipulated Facts and Trial Exhibit. [Doc. 115] accurately reflects the phone calls made by and to Windsor with regard to Anastatia Jasper.  Plaintiff's testimony that there were other undocumented phone calls to or from Windsor is not credible.  The joint stipulated facts are incorporated herein.

18. Windsor spoke to Wesley Britt, Brian Britt's father, seeking information about Brian Britt's location and phone number with the intention of contacting Brian Britt to determine if Brian Britt knew Plaintiff's location.  When Wesley Britt balked at releasing Brian Britt's contact information directly to Windsor, Windsor asked Wesley Britt to tell Brian Britt that Windsor needed to speak with him.

19. Windsor spoke to Alissa Britt seeking information about Plaintiff's location. Windsor did not tell Allissa Britt that it was calling about a debt or that it was a debt collector.

20. Windsor spoke to Brian Britt seeking information about Plaintiff's location. Windsor explained to Britt that Windsor knew that Plaintiff's Colorado utility bill had been sent to Britt's Rio Rancho address. Windsor told Brian Britt that Windsor needed to speak with Plaintiff and that it would be in Plaintiff's interest to contact Windsor.  Windsor did not disclose Plaintiff's debt to Chase Bank in its conversation with Brian Britt.  Windsor told Brian Britt that without her permission it could not disclose why it was attempting to locate Plaintiff.  Brian Britt

3

was aware prior to the phone call from Windsor that an attempt had been made to repossess Plaintiff's truck.  He also was aware that Plaintiff had filed a lawsuit concerning the truck.  His knowledge of these matters came from sources other than his phone conversation with Windsor.

21. Windsor spoke to Nicole Balido seeking information about the location of Plaintiff and her truck. Although Nicole Balido testified in her deposition that "I believe they said that she had defaulted on a loan, which indicated that they were trying to repossess her truck,"  the Court finds that Nicole Balido was confused and that in her deposition testimony she reversed the information she was given and the inference that she drew.  In other words, the Court finds that, contrary to her recollection at her deposition,  she inferred from the fact that Windsor was trying to repossess the truck that Plaintiff had defaulted on her loan with Chase Bank.  Windsor asked Nicole Balido whether Plaintiff had filed for bankruptcy.  Windsor also asked Nicole Balido questions about Plaintiff's familial relationship to certain persons, identifying them by name.

22. Plaintiff did not provide Windsor with written notification that she wished Windsor to cease further communication with her.

23. Windsor did not send Plaintiff the notice described in 15 U.S.C. § 1692g(a).

24. Attorney Feferman faxed a cease and desist letter to Windsor on September 13, 2010.  There is no evidence as to when on September 13, 2010 Windsor received this fax.   Prior to this letter, Windsor had no knowledge that attorney Feferman was representing Plaintiff with regard to her debt to Chase Bank.  The last phone call from Windsor to Plaintiff took place at 2:03 p.m. New Mexico time on September 13, 2010.

25. Windsor closed its file concerning Plaintiff on September 15, 2010 and thereafter did no further work on the matter.

26. Plaintiff filed a *pro se* Chapter 7 petition in U.S. Bankruptcy Court for the District of New Mexico on May 5, 2011. *In re Jasper*, No. 11-12267-s7 (Bankr. D. N.M.).

27. Plaintiff was not a credible witness. She was hesitant in her responses and her recollection of events was selective and unreliable. At trial, the Court observed Plaintiff to be hesitant at times in responding to questions and otherwise displayed a demeanor suggestive of a lack of forthrightness. Due to Plaintiff's general lack of credibility, the Court is unwilling to accept Plaintiff's uncorroborated version of events, including her version of the substance of her phone conversations with Windsor and her testimony concerning the effect of Windsor's actions on her emotional state.

28. Contrary to Plaintiff's testimony, Windsor did not, at any time, offer to accept a payment on the debt Plaintiff owed to Chase Bank. Windsor at no time attempted to collect the debt owed by Plaintiff to Chase Bank.

**Conclusions of Law**

1. The Court has jurisdiction over the subject matter and the parties.

2. Venue lies in this judicial district.

3. Plaintiff is a "consumer" as defined by the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et. seq.*

4. The debt owed by Plaintiff to Chase Bank was a consumer debt as defined by the FDCPA.

5.	Windsor is deemed a debt collector as defined by the FDCPA solely for purposes of this litigation and solely as a discovery sanction. [Doc. 88 at 5]

6.	15 U.S.C. § 1692k(a) provides that  "any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to *such* person. . . ." (Emphasis added).   Plaintiff does not have standing under § 1692k(a) to assert claims based on violations of third parties' rights under the FDCPA.

7.	Plaintiff has not shown by a preponderance of the evidence that Attorney Hickox represented Plaintiff with respect to her loan from Chase Bank.

8.	Plaintiff was represented by attorney Richard N. Feferman with regard to her loan from Chase Bank.  Plaintiff has failed to establish by a preponderance of the evidence that any of the phone calls from Windsor to Plaintiff occurred after Windsor received notice that Feferman was representing Plaintiff.

9.	Windsor violated 15 U.S.C. §§ 1692b and 1692c(b) by asking Nicole Balido about Plaintiff's truck and seeking information other than Plaintiff's place of abode, telephone number, and place of employment.

10.	Windsor violated 15 U.S.C. § 1692c(a)(1) by placing a call to Plaintiff's phone number prior to 8:00 a.m.

11.	Windsor violated 15 U.S.C. § 1692e(11) by not identifying itself as a debt collector in its initial and subsequent oral communications with Plaintiff, and by not informing Plaintiff in its initial communication that any information obtained from Plaintiff would be used in collecting a debt.

12. Windsor violated 15 U.S.C. § 1692g(a) by failing to provide Plaintiff with the written notice described in this subsection.

13. Windsor has failed to establish its entitlement to the bona fide error defense to liability under 15 U.S.C. § 1692g.

14. Plaintiff has failed to prove by a preponderance of the evidence that she suffered actual damages.

15. An award of statutory damages requires consideration of relevant factors, including those set out in 15 U.S.C. § 1692k(b)(1).  The Court finds an award of $250 in statutory damages to be appropriate.

16. Plaintiff is a prevailing party for purposes of the FDCPA, and may recover her costs together with a reasonable attorney's fee to be determined by the Court.

17. The New Mexico Unfair Practices Act provides that "[a]ny person who suffers any loss of money or property, real or personal, as a result of [an unfair or deceptive trade practice] may bring an action to recover actual damages or the sum of one hundred dollars ($100), which ever is greater."  NMSA 1978, 57-12-10(B).

18. Plaintiff has failed to prove by a preponderance of the evidence that she "suffer[ed] any loss of money or property" as the result of Windsor's actions.

19. Because Plaintiff has failed to prove that she suffered any actual loss of money or property, she may not recover statutory damages  pursuant to subsection 57-12-10(B). *Page & Wirtz Construction Co. v. Solomon*, 110 N.M. 206, 211 (1990) ("[R]ecovery of damages under paragraph (B) includes only those persons 'who suffer any loss of money or property.'"); *United*

*States ex rel. Ramona Equipment Rental, Inc. v. Liberty Mut. Ins. Co.*, No. 08-CV-0811 MCA/ACT [Doc. 262 at 8-12 (discussing *Page & Wirtz*)].

20. Plaintiff is not entitled to actual or statutory damages pursuant to subjection 57-12-10(B).

21. Plaintiff is not a prevailing party under the NMUPA.

**Entered this 18th day of June, 2013.**

_____
M. CHRISTINA ARMIJO
UNITED STATES DISTRICT JUDGE