IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ANASTATIA JASPER,

    Plaintiff,

vs.

                          10cv980 MCA/RHS

WINDSOR EQUITY GROUP, INC.,

    Defendant.

## **ORDER**

    This case is before the Court upon *Plaintiff's Motion for Attorney Fees* [Doc. 119]. The Court has considered the written submissions of the parties, the representations and oral arguments of counsel at the hearing on Plaintiff's motion, the record in this case, and the applicable law, and is otherwise fully advised in the premises.

    In this case, for purposes of addressing the request for attorneys fees, the Court begins its analysis by noting that it is essential to undo the usual conflation of client and the attorney. In contrast to the typical case in which the focus of the Court's analysis is the reasonableness of the attorney-agent's billing judgment, this is a case in which the focus of the Court's analysis is the reasonableness of the client-principal's conduct.

    Plaintiff Anastatia Jasper recovered $250 in statutory damages. She now seeks a reasonable attorney's fee. 15 U.S.C. § 1692k(a)(3). Defendant Windsor does not take issue with

specific entries, or with the hourly rates charged by Plaintiff's counsel.[1] Rather, Windsor argues that the amount of fees requested by Ms. Jasper--nearly $60,000 for litigating the case through trial--is unreasonable given her relative lack of success on the merits. Windsor is correct that the level of success achieved by a plaintiff is a proper consideration, and may justify reducing the fee award below the lodestar amount. *Hensley*, 461 U.S. at 434. "[W]here the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." *Id.* at 440.

At trial, Ms. Jasper's case foundered on her own testimony. Most significantly, Windsor established in cross-examination that Ms. Jasper's deposition testimony about an outrageously large number of phone calls made by Windsor was untrue.[2] Plaintiff's lack of credibility on this crucial issue undermined her general credibility.

---

[1] These two factors are used in calculating a "lodestar" amount: "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Anchondo v. Anderson, Crenshaw & Assoc.*, 616 F.3d 1098, 1102 (10th Cir. 2010) (quoting *Hensley v. Eckerhart*, 461 U.S. 414, 433 (1983)) (internal quotation marks omitted).

[2] By the time of trial, Mr. Feferman certainly was aware of the conflict between Ms. Jasper's deposition testimony and the phone records. Consistent with his duty not to offer evidence known to be false, NARA 16-303(A)(3), Mr. Feferman avoided asking Ms. Jasper questions that would have elicited testimony consistent with her false deposition testimony about the number of phone calls. [Doc. 114 at 11; Trial Transcript at 210]

When Ms. Jasper first consulted with her attorney, Richard Feferman, about bringing a suit against Windsor, Ms. Jasper must have known that she had not been subjected to the type of outrageous and harassing conduct that she subsequently described during her deposition. Ms. Jasper also must have known, as would later be found by the Court, that "Windsor did not, at any time, offer to accept a payment on the debt Plaintiff owed to Chase Bank." [Doc. 116, Finding of Fact No. 28]   Plaintiff would have known that she and her former domestic partner, Nicole Balido, had ceased living together in July 2010 [Doc. 116, Findings of Fact Nos. 12 and 15], and therefore Plaintiff knew that Windsor was not responsible for the deterioration and breakup of her relationship with Ms. Balido.   Plaintiff knew that Windsor had not attempted to contact her subsequent to the letter faxed to Windsor by Mr. Feferman on September 13, 2010.   Ms. Jasper must have known that she had not suffered any appreciable economic damages as the result of Windsor's activities.

The Court finds that when Ms. Jasper first consulted with Mr. Feferman about bringing an action against Windsor, she knew or should have known that on the true facts this was not a case that was ever likely to result in an award of substantial actual damages, assuming of course that Mr. Feferman could overcome substantial legal and evidentiary hurdles and establish that Windsor was a debt collector and that it was engaged in the collection of a debt when it contacted her.[3]

---

[3] The law is fairly well established that a skip-tracer, which Windsor claimed to be, and the Court found Windsor to be,   generally is not subject to the FDCPA. *Demaestri v. Verifacts Inc.*, Civil Action No. 11-cv-02430-WYD-KMT, 2012WL1192758 *7(D. Colo. Mar. 16, 2012) (collecting cases); *see also Jordan v. Kent Recovery Services, Inc.*, 731 F.Supp. 652, 657 (D. Del. 1990) (discussing limited applicability of FDCPA to repossession service) ("It thus appears that Congress intended an enforcer of a security interest, such as a repossession agency, to fall outside the ambit of the FDCPA except for the provisions of § 1692f(6)."). Plaintiff has disclaimed reliance on §1692(f)(6) [Doc. 21 at 1].   The Court is aware of, but is not persuaded by, Plaintiff's theory that because Windsor's written contracts with creditors contained language authorizing Windsor to act as a debt collector, Windsor was a debt collector even if it did not actually act on

Apparently lacking knowledge of the true facts, Mr. Feferman proceeded to litigate the case believing that Windsor had attempted to collect the debt owed by Ms. Jasper to Chase Bank and that he would be able to present the factfinder with evidence of outrageous and harassing conduct by Windsor justifying an award of substantial damages.  *See Stanecki v. Turning Point Capital, Inc.*, Civil Action No.12-cv-02812-MSK-KLM, 2013WL1966917 *3 (D. Colo. May 13, 2013) (observing that "the level of emotional distress experienced--and hence the amount of damages recoverable--may increase with the number of violations of the statute to which the victim is subjected").

In its Findings of Fact, the Court found that "Plaintiff had been employed in three jobs that involved collections, and was aware of the 'dos and don'ts' of collections."  For purposes of Plaintiff's motion, the Court now finds that Ms. Jasper, using her knowledge of collections practices, fabricated a scenario that she presented to Mr. Feferman to induce him to bring a FDCPA case on her behalf and to litigate the case in the belief that Windsor had attempted to collect Ms. Jasper's debt to Chase Bank, and that Windsor had engaged in outrageous and harassing conduct justifying substantial damages for emotional distress.

---

that authority by collecting or attempting to collect debts.  At the hearing on Plaintiff's motion, Mr. Feferman conceded that no court has found Windsor to be a debt collector.  Further, for most types of prohibited conduct, the plaintiff must prove that the conduct occurred "in connection with the collection of a [or any] debt."  15 U.S.C. §§ 1692c, 1692d, 1692e, and 1692g.  To establish liability under these provisions, Mr. Feferman would have had to prove that Windsor in its dealings with Ms. Jasper and her friends and relatives was attempting to collect a debt. *Burling v. Windsor Equity Group, Inc.*, No. 2:12-cv-05371-SVW-AGR, 2012WL5330916 *4 (C.D. Cal. Oct. 18, 2012) ("[T]he Court must determine whether a reasonable jury could find that Windsor's calls were made in connection with the collection of a debt.").

Although the Court treated Windsor as a debt collector in its Findings of Fact and Conclusions of Law, it did so **solely to give effect to the Magistrate Judge's discovery sanction of deeming Windsor a debt collector**. The Court found as a matter of historical fact that Windsor does not regularly engage in the business of debt collection, that Windsor was not hired by Chase to collect a debt owed by Ms. Jasper, and that Windsor at no time attempted to collect the debt owed by Ms. Jasper to Chase Bank. Were it not for the discovery sanction, Ms. Jasper would not have recovered anything. In view of the Court's ruling that "Windsor is deemed a debt collector as defined by the FDCPA solely for purposes of this litigation and solely as a discovery sanction," the judgment in this case will have no preclusive effect in other FDCPA litigation against Windsor. Thus, as Windsor's counsel pointed out at the hearing on Plaintiff's motion, the $250 judgment entered by the Court against Windsor--who as a matter of historical fact was not a debt collector-- vindicates the discovery provisions of the Federal Rules of Civil Procedure, not the policies underlying the FDCPA.

The Court finds that Ms. Jasper brought this lawsuit in bad faith. When she authorized the filing of the complaint, she could not have anticipated the Magistrate Judge's discovery sanction, without which she would not have prevailed. Ms. Jasper acted unreasonably and dishonestly when, with knowledge of the true facts, she permitted Mr. Feferman to file this lawsuit and to perform tens of thousands of dollars of work preparing this case for trial. The Court finds that given Ms. Jasper's minimal success, and her dishonest and unreasonable behavior, a reasonable attorney's fee is no attorney's fee.

The Court is not without sympathy for Mr. Feferman, who the Court believes was misled by his client. But as previously noted, this is a case in which it is important to distinguish the client from her counsel. It is firmly established that "it is the party, rather than the lawyer," who is

eligible for a fee award.  *See Venegas v. Mitchell*, 495 U.S. 82, 87 (1990) (discussing 42 U.S.C. § 1988); *accord Manning v. Astrue*, 510 F.3d 1246 (10th Cir. 2007) (discussing EAJA fee award). Since Mr. Feferman's right to share in the award is derivative of Ms. Jasper's right to a fee award, his rights can rise no higher than hers.

**IT IS THEREFORE HEREBY ORDERED** that *Plaintiff's Motion for Attorney's Fees* [Doc. 119] is **denied**.

So Ordered this 18th day of February, 2014.

_____
M. CHRISTINA ARMIJO
CHIEF UNITED STATES DISTRICT JUDGE